UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---
ELIE DEITSCH,

                      Plaintiff,

-against-

TRUIST BANK f/k/a/ SUNTRUST BANK,

                      Defendant.
---

**MEMORANDUM & ORDER**
20-CV-06251 (NGG) (RML)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Elie Deitsch ("Plaintiff") commenced this action against Truist Bank f/k/a/ SunTrust Bank ("Defendant" or "Truist") seeking to recover for Defendant's alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.* (*See* Compl. (Dkt. 1).)[1] Currently before the court is Defendant's fully briefed motion for summary judgment made pursuant to Federal Rule of Civil Procedure 56. (*See* Not. of Mot. (Dkt. 53); Mem. in Supp. of Mot. ("Mot.") (Dkt. 54); Opp. to Mot. ("Opp.") (Dkt. 56); Reply (Dkt. 59).) For the reasons set forth below, Defendant's motion is GRANTED.

## I. BACKGROUND

### A. Admissibility of Plaintiff's Supporting Materials

At the outset, the court must review whether it is appropriate to consider Plaintiff's Equifax and TransUnion credit reports, (*see* Willard Decl. (Dkt. 58); Ex. A to Willard Decl. ("Equifax Credit

---

[1] Truist Bank is the sole remaining Defendant in this case. Plaintiff initially filed this lawsuit against TransUnion, LLC; Equifax Information Services, LLC (collectively, the "Consumer Reporting Agencies" or "CRAs"); Truist Bank; and Toyota Motor Credit Corporation. (*See* Compl.) All defendants with the exception of Truist Bank have since been dismissed. (*See* Stipulations of Dismissal as to Toyota Motor Credit Corporation, (Dkt. 39), Equifax Information Services, LLC, (Dkt. 41), and TransUnion, LLC, (Dkt. 46).)

Report") (Dkt. 58-1); Ex. B to Willard Decl. ("TransUnion Credit Report") (Dkt. 58-2)[2]) in ruling on the instant motion for summary judgment. (*See* Reply at 2 n.2.) Defendant argues that the credit reports, submitted as exhibits and appended to his counsel's sworn affidavit, were not exchanged during the discovery period that closed over a year ago. (*Id.*) Plaintiff, in an earlier letter submitted to the court, stated that he did exchange credit reports, among other documents in his possession, with Truist. (*See* Response to PMC Request (Dkt. 48) at 1-2.)

It is unclear to the court whether the credit reports were exchanged with Truist. Nevertheless, the credit reports may be considered in ruling on this motion. The general rule is that "[a]ffidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." *Santos v. Murdock*, 243 F.3d 681, 684 (2d Cir. 2001).

Plaintiff submitted an affidavit by his counsel, Kenneth Willard, which included Plaintiff's Equifax and TransUnion credit reports dated September 30, 2020. (*See* Willard Decl.; Equifax Credit Report; TransUnion Credit Report.) While Mr. Willard as undersigned counsel is not qualified to testify about reports made by Equifax or TransUnion, *see* Federal Rule of Evidence 803(6), Plaintiff could authenticate information included in the reports to allow them to be admitted at trial. *See Sanchez v. Healthcare Revenue Recovery Grp., LLC*, No. 16-81579-CIV, 2018 WL 2021359, at *4 (S.D. Fla. Mar. 8, 2018) ("rejecting that "computer-generated Report[s] [are] incapable of authentication at trial."); *see also Gray v. Suttell & Assocs.*, 123 F. Supp. 3d 1283, 1294 (E.D. Wash. 2015) ("At the summary-judgment phase, the

---

[2] The court takes note that Plaintiff cites to the ECF page number of each report. Because both credit reports include page numbers in the right-hand corner, the court will refer to those page citations throughout this Opinion.

Court focuses on the admissibility of the evidence's contents, rather than on the admissibility of its form."). The reports are quite extensive, including personal identifiable information specific to Plaintiff (*i.e.*, name, account numbers, length of accounts, number of hard inquiries, etc.), his credit accounts and lengthy history beyond the Truist auto loan, and the reports are submitted in a form that is typical of credit reports (such as including Plaintiff's name, the CRA name, and date of the report in the header or footer of each page). Plaintiff could authenticate information included in the reports to allow them to be admitted at trial.

Moreover, Plaintiff's credit reports are undoubtedly relevant to the case at bar. Plaintiff refers to them in his Complaint and Opposition brief, and Defendant, despite arguing that they should not be admissible, nevertheless references Plaintiff's credit reports in its Reply and even includes a screenshot of the credit report details. (*See, e.g.*, Compl. ¶¶ 16, 26; Opp. at 8, 13, 11, 15; Reply at 5.) Accordingly, the court will consider the credit reports for purposes of summary judgment.

### B. Factual Background[3]

#### 1. Plaintiff's Account and Payments

In or around April 2015, Plaintiff obtained a 60-month term auto loan from SunTrust Bank, predecessor to Truist Bank, secured by a motor vehicle (the "Account"). (Def. 56.1 St. (Dkt. 55) ¶ 1; Pl.

---

[3] Unless otherwise noted, the following undisputed facts are drawn from the parties' Local Rule 56.1 Statements and the admissible evidence they submitted. Where the parties allege different facts, the court notes the dispute and credits the Plaintiff's version if it is supported by evidence in the record. *June v. Town of Westfield*, 370 F.3d 255, 257 (2d Cir. 2004) (construing "the evidence in the light most favorable to the non-moving party and . . . draw[ing] all reasonable inferences in its favor") (quoting *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 165-66 (2d Cir.2003)).

56.1 St. (Dkt. 57) ¶ 1.) The opening balance for the Account was $22,113.00 and Plaintiff agreed to make monthly installments of $436.94 toward the Account. (Def. 56.1 St. ¶ 2; Pl. 56.1 St. ¶ 2.)

The dispute centers on payments due on the Account between January 2020 and June 2020 when the Account was closed. On January 13, 2020, Plaintiff made a payment of $436.94 toward the Account, but that payment was returned for "no sufficient funds" and Plaintiff was assessed a return fee. (Def. 56.1 St. ¶¶ 3-4; Pl. 56.1 St. ¶¶ 3-4.) Plaintiff did not make another payment in January 2020 toward the Account. (Def. 56.1 St. ¶ 5; Pl. 56.1 St. ¶ 5.) On February 13, 2020, Plaintiff made a payment of $436.94 toward the Account, but that payment was returned for "no sufficient funds" and Plaintiff was again assessed a return fee. (Def. 56.1 St. ¶¶ 6-7; Pl. 56.1 St. ¶¶ 6-7.) Plaintiff did not make another payment in February 2020 toward the Account. (Def. 56.1 St. ¶ 8; Pl. 56.1 St. ¶ 8.) On March 6, 2020, Plaintiff made a payment of $970.71 toward the Account. (Def. 56.1 St. ¶ 9; Pl. 56.1 St. ¶ 9.) On April 23, 2020, Plaintiff made a payment of $436.94 toward the Account. (Def. 56.1 St. ¶ 10; Pl. 56.1 St. ¶ 10.)[4] Plaintiff's Account appeared current for the month of May, but a delinquency was reported in June 2020. (Def. 56.1 St. ¶ 11; Pl. 56.1 St. ¶ 11.)[5] Plaintiff then made a final payment of $317.17

---

[4] The court notes that Plaintiff's response as to this fact was left blank in his 56.1 Statement. (*See* Pl. 56.1 St. ¶ 10). The court construes the blank response as an admission of fact where it otherwise is not raised as a point of contention in the parties' pleadings.

[5] Defendant states that Plaintiff did not make a payment towards the Account in May 2020 and was assessed a late fee. Plaintiff's payment history in his credit reports, however, show that for the month of May, Plaintiff paid his installment on time, represented by either a green checkmark in the Equifax report, (*see* Equifax Credit Report at 49), or a green box for the month of May in the TransUnion report, (*see* TransUnion Credit Report at 22). But Plaintiff's Equifax report also indicates in the Account Details a first date of delinquency on June 1, 2020. (*See* Equifax Credit Report at

in June and his Account was subsequently closed. (Def. 56.1 St. ¶ 12; Pl. 56.1 St. ¶ 12.)[6]

Plaintiff asserts that at the time he made the final payment, the Account did not indicate whether he was delinquent, but his TransUnion credit report indicated a payment status of "30 days past due" and his Equifax credit report noted a date of first delinquency on June 1, 2020. (Def. 56.1 St. ¶ 13; Pl. 56.1 St. ¶ 13; *see also* TransUnion Credit Report at 22; Equifax Credit Report at 50.)[7] The Account is currently closed and has a $0 balance. (Def. 56.1 St. ¶ 14; Pl. 56.1 St. ¶ 14.)

---

50.) Accordingly, the court accepts the facts as stated in the credit reports as true. *Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651 (MKB) (SJB), 2021 WL 3486944, at *3 (E.D.N.Y. July 21, 2021), *report and recommendation adopted*, No. 20-CV-651 (MKB) (SJB), 2021 WL 3476675 (E.D.N.Y. Aug. 6, 2021).

[6] The parties dispute the date at which payment was received and the Account was closed. Plaintiff's Equifax credit report notes that the "date of last payment" was on June 1, 2020 and that the Account was closed on the same day. (*See* Equifax Credit Report at 50.) Plaintiff's TransUnion credit report only notes that the balance was updated on June 22, 2020. (*See* TransUnion Credit Report at 22). Defendant's declarations do not resolve the discrepancy. LaMar Mack, Loan Operations Support Analyst at Truist, submits that Plaintiff paid off his Account on June 26, 2020, (*see* Mack Decl. (Dkt. 55-1) ¶ 17), whereas Steve Busic, Truist Vice president, submits that the date of last payment and date of closure were on June 22, 2020 (*see* Busic Decl. (Dkt. 55-2) ¶ 14). Appended to Mr. Busic's declaration is the Automated Credit Dispute Verification Form ("ACDV") Truist received from Equifax related to the dispute Plaintiff made regarding his Account; it notes two different closure and payment dates (June 1, 2020 and June 22, 2020). (*See* Decl. of Steve Busic, Ex. B-1 ("Equifax ACDV") (Dkt. 55-2).) As none of the evidence clarifies which dates are controlling, the court will only note that Plaintiff paid off his Account and it was in turn closed in June 2020.

[7] Defendant asserts that at the time Plaintiff made his final payment, the Account was 30 days past due. (*See* Mack Decl. ¶ 18). The Equifax and TransUnion ACDV's submitted by Defendant indicate a "FCRA DOFD" or FCRA Date of First Delinquency of June 1, 2020 and June 11, 2020. (*See*

5

2. Plaintiff's Dispute[8]

Prior to initiating this lawsuit, Plaintiff sent dispute letters to Equifax and TransUnion stating:

> I am disputing the following account appearing on my file. This account is inaccurate. I dispute this account and I am requesting that this account be removed from my files as they are inaccurately reporting since this account was paid and closed; therefore, the payment status cannot be listed as 30 days past due.

(Pl. 56.1 St. ¶¶ 33-34.)[9]

Plaintiff had a single 30-day historical delinquency for the month of February 2020. (Pl. 56.1 St. ¶¶ 36, 38; *see also* Equifax Credit Report at 49; TransUnion Credit Report at 22.) Plaintiff's payment history with Truist was otherwise spotless, including current notations for the months of January, March, April and May 2020, and no data indicated for June, July, and August

---

Equifax ACDV; Decl. of Steve Busic, Ex. B-3 ("TransUnion ACDV") (Dkt. 55-2).) Plaintiff's CRA reports, on the other hand, report that no data is available for the month of June, as shown by the greyed-out box for June under "Payment History" but nevertheless indicate that his Account status was either "NOT_MORE_THAN_TWO_PAYMENTS_PAST_DUE" or "30 days past due." (*See* Equifax Credit Report at 48-49; TransUnion Credit Report at 22.)

[8] The facts in this section are drawn from Plaintiff's Counterstatement of Undisputed Material Facts in support of his opposition to Defendant's motion for summary judgment. (*See* Pl. 56.1 St. ¶¶ 33-41.) Defendant has not contested these facts when submitting its reply. *Thompson*, 2021 WL 3486944, at *2.

[9] Plaintiff asserts that he sent the Equifax letter on June 2, 2020 and the TransUnion letter on August 11, 2020. (Pl. 56.1 St. ¶¶ 33-34.) However, the letters submitted into evidence show that Plaintiff sent both letters on the same date. (*See* Willard Decl., Ex. C ("Equifax Dispute Letter") (Dkt. 58-3); Ex. D ("TransUnion Dispute Letter") (Dkt. 58-4).)

6

2020. (Pl. 56.1 St. ¶¶ 36, 38; *see also* Equifax Credit Report at 49; TransUnion Credit Report at 22.)

### 3. Truist's Investigation of Plaintiff's Dispute

Truist received Automated Consumer Dispute Verification Forms ("ACDV") on August 26, 2020 from Equifax and on August 27, 2020 from TransUnion concerning a dispute raised by Plaintiff regarding his Account. (Def. 56.1 St. ¶¶ 19, 25; Pl. 56.1 St. ¶¶ 19, 25.) Both ACDVs featured a dispute code of "106: Disputes present/previous Account Status/Payment Rating/Account History. Verify Account Status, Payment Rating and Account History." (Def. 56.1 St. ¶¶ 20, 26; Pl. 56.1 St. ¶¶ 20, 26.) The TransUnion ACDV also featured an "FCRA Relevant Information" box stating "Paid and closed." (Def. 56.1 St. ¶ 27; Pl. 56.1 St. ¶ 27.)

In response to the ACDVs, Truist reviewed the dispute raised by Plaintiff regarding his Account status and payment history and analyzed the description of the dispute that was transmitted with each ACDV. (Def. 56.1 St. ¶¶ 21, 28; Pl. 56.1 St. ¶¶ 21, 28.) According to Plaintiff, however, Truist's investigator specifically declined to review outside sources of information such as original documents when comparing and analyzing all information in its applicable systems. (Def. 56.1 St. ¶¶ 21, 28; Pl. 56.1 St. ¶¶ 21, 28.) Truist submitted a response to the ACDVs on September 10, 2020 in which the Truist investigator confirmed Plaintiff's Account status as closed and confirmed the Account history. (Def. 56.1 St. ¶¶ 23, 30; Pl. 56.1 St. ¶¶ 23, 30; *see also* Equifax ACDV; TransUnion ACDV.)

With respect to the Equifax ACDV, Truist's investigator updated certain disputed information, including confirming the Account history, that the Account had an amount past due balance of $0, a scheduled payment of $0, a date of closure of June 22, 2020, a date of last payment of June 22, 2020, a date of account information of June 22, 2020, and an FCRA date of first delinquency of June 11, 2020. (Def. 56.1 St. ¶ 23; Pl. 56.1 St. ¶ 23; *see also* Equifax

7

ACDV.)[10] Truist's investigator also confirmed the payment rating as 30-59 days past the due date,[11] but Plaintiff asserts that the investigator failed to do so in accordance with CRRG guidance[12] that permits investigators to look beyond applicable systems and review third-party information if necessary. (Def. 56.1 St. ¶¶ 16, 23; Pl. 56.1 St. ¶¶ 16, 23.)

Regarding the TransUnion ACDV, according to Plaintiff, a similar investigation revealed that the investigator confirmed the payment rating as 30-59 days past the due date but failed to do so in accordance with CRRG guidance. (Def. 56.1 St. ¶ 30; Pl. 56.1 St. ¶ 30.)[13]

Plaintiff argues that due to Defendant's failure to conduct a reasonable investigation and its inaccurate reporting of his Account to CRAs such as Equifax and TransUnion, Plaintiff has suffered a decreased credit score creating a "chilling and detrimental effect on future applications for credit." (*See* Compl. ¶ 24.)

Plaintiff filed his complaint on December 24, 2020. (*See* Compl.) Following limited discovery, this court granted both parties leave

---

[10] Plaintiff specifies that as a factual matter, the date of last payment was not on June 22, 2020, but rather on June 1, 2020. (*See* Pl. 56.1 St. ¶ 23.)

[11] Defendant asserts that the investigator confirmed the payment rating as 30-59 days past the due date *prior* to the Account status; Plaintiff denies that it was confirmed prior to the Account status. (Def. 56.1 St. ¶ 23; Pl. 56.1 St. ¶ 23.)

[12] CRRG guidance, or the Credit Reporting Resource Guide, is a resource published by the Consumer Data Industry Association that provides furnishers of information with the applicable codes for compliance with, *inter alia*, FCRA requirements. *See* Publications, Consumer Data Industry Assoc., https://www.cdiaonline.org/publications/ (last visited December 12, 2023).

[13] Similar to the Equifax ACDV, Defendant asserts that the investigator confirmed the payment rating as 30-59 days past the due date *prior* to the Account status but Plaintiff denies that it was confirmed prior to the Account status. (Def. 56.1 St. ¶ 23, 30; Pl. 56.1 St. ¶ 23, 30.)

to file motions for summary judgment. (*See* Minute Entry dated 4/27/2023.) Only Truist has moved for summary judgment, arguing that it is entitled to a judgment as a matter of law where Plaintiff cannot show that (1) Truist failed to conduct a reasonable investigation into his dispute, (2) Truist violated the FCRA willfully or negligently resulting in actual damages, and (3) Truist's reporting of his Account was misleading or otherwise inaccurate. (*See* Mot. at 1-2.) Truist's motion was fully briefed on July 24, 2023. (*See* Not. of Mot.; Mot.; Opp.; Reply.) The court now turns to the motion.

## II. LEGAL STANDARD

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the burden of establishing that there are no material facts that preclude judgment as a matter of law. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).

Once the movant has met its initial burden, the party opposing summary judgment "must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Am. Empire Surplus Lines Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 16-CV-5664 (AMD) (JO), 2018 WL 10456838, at *4 (E.D.N.Y. July 23, 2018). "An issue of fact is material for these purposes if it might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000).[14] A "genuine" issue of fact is one where "the evidence is such that a reasonable jury could return a verdict for

---

[14] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

the non-moving party." *Id.* A genuine issue of fact cannot be established by "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998).

All evidence is construed in the light most favorable to the non-moving party, with all "reasonable inferences" drawn in his favor. *ING Bank N.V. v. M/V Temara, IMO No. 9333929,* 892 F.3d 511, 518 (2d Cir. 2018).

### III. DISCUSSION

#### A. Requirements to Establish Section 1681s-2(b) Claim

Defendant argues it is entitled to a judgment as a matter of law because Plaintiff cannot show essential elements required to establish his FCRA Claim brought under § 1681s-2(b). (*See* Compl. ¶¶ 96-118.)

A plaintiff seeking relief pursuant to 15 U.S.C. § 1681s-2(b) must prove that: "(1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in willful or negligent noncompliance with the statute." *Markovskaya v. Am. Home Mortg. Servicing, Inc.,* 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012). "[O]ne of the core ways in which a plaintiff may establish willful or negligent noncompliance with the statute, is to show that the furnisher failed to *reasonably* investigate the plaintiff's dispute." *Frederick v. Capital One Bank (USA), N.A.,* No. 14-CV-5460, 2018 WL 1583289, at *7 (S.D.N.Y. March 27, 2018) (emphasis in original); *see Amendoeira v. Monogram Credit Card Bank of Georgia,* No. 05-CV-4588, 2007 WL 2325080, at *1 (E.D.N.Y. Aug. 7, 2007) ("While the FCRA does not state with specificity the type of investigation required, courts have required a reasonable investigation to determine whether disputed information can be verified.").

"Accuracy is also an essential element of a claim for negligent or willful violation of § 1681s-2(b) of the FCRA." *Krausz v. Equifax Information Services, LLC*, No. 21-CV-7427, 2023 WL 1993886, at *11 (S.D.N.Y. Feb. 14, 2023). A "threshold showing of inaccuracy or incompleteness is necessary to succeed on a claim under § 1681s-2(b)." *Id.* "[I]f the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Collins v. Experian Credit Reporting Serv.*, 494 F. Supp. 2d 127, 135 (D. Conn. 2007).

"The overwhelming weight of authority holds that a credit report is inaccurate . . . either when it is patently incorrect *or* when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect on credit decisions." *Gross v. Private National Mortgage Acceptance Company, LLC*, 512 F. Supp. 3d 423, 426 (E.D.N.Y. 2021) (emphasis in original). However, "[m]ere imprecision is not enough. . . . Rather, a plaintiff must establish that the information provided by the consumer reporting agency is open to an interpretation that is directly contradictory to the true information." *Id.*

### B. Application: Reporting of Inaccurate and Misleading Information

Plaintiff argues that describing his "Account Status" as "past due" is inaccurate and materially misleading because it suggests that his Account is currently delinquent despite his Account being paid off and closed in June 2020. (*See generally* Opp. at 5-13.) Plaintiff points to his credit reports to show that "nothing in the payment history" indicates that the Account was delinquent in the months surrounding the closure of the account. (*Id.* at 7.) Thus, "[w]ithout a historical delinquency appearing in the month prior to the account being closed or the month of closure itself," it "makes no sense" for the "past due" notation to "merely represent[] a historical status." (*Id.* at 8.)

11

This court disagrees. In reviewing Plaintiff's credit reports, this court must look at the credit reports as a whole. *Gross*, 512 F. Supp. 3d at 427 ("If a creditor read the "Pay Status" entry in isolation, the creditor might conclude that the account was currently past due. But when the creditor read the rest of the entries, the creditor would surely forego that conclusion."). In these reports, only one delinquency was noted in his payment history for February 2020. (*See* Equifax Credit Report at 49; TransUnion Credit Report at 22.) This indicates that Plaintiff paid his monthly installment on time in May 2020, whereas in June 2020 there is no data reported. (*See* Equifax Credit Report at 49; TransUnion Credit Report at 22.)

But elsewhere in the reports, however, there are several indications that the Account is closed and paid off, and therefore accurate. For example, in his Equifax report, the header reads, "4.2 SunTrust Bank South Fl (Closed)," and the Summary section notes that there is a reported balance of $0. (Equifax Credit Report at 48.) In the Account Details section, it also notes a balance of $0, is designated as "PAID_AND_CLOSED," and notes the date of last payment, the closure date, and notably the date of first delinquency as "Jun 01, 2020." (*Id.* at 50.)

Plaintiff's TransUnion credit report, while shorter, is even more straightforward. In this report, it states at the top right that the Account is closed; it also notes the Account Status as "Closed," the balance as $0, the past due amount as $0, and the Payment status as "30 days past due." (TransUnion Credit Report at 22.) While "past due" could "connote an ongoing monthly obligation in some cases, Plaintiff's is not one of them. No one could be misled into believing that the past-due balances on Plaintiff's [credit reports] suggest an ongoing monthly obligation when the monthly payment on each account is listed as $0." *Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175 (CS), 2020 WL 6809059, at *4 (S.D.N.Y. Nov. 19, 2020). Ultimately, a creditor reviewing

all of the information would conclude that the Account is closed, there are no outstanding monthly obligations, and that while the Account was previously past due, that amount has been paid off as of June 2020. Moreover, the discrepancies between the date of final payment and first delinquency, *compare* Def. 56.1 St., *with* Pl. 56.1 St., are not details rendering the reports inaccurate or misleading based on the other indicators clearing showing that the Account has a $0 balance and is closed. Accordingly, in considering the evidence that has been presented, a "reasonable prospective lender would understand the report showed a past obligation only, and the report is, therefore, not materially misleading." *Jones v. Equifax Info. Servs., LLC*, No. 18-CV-2814 (JPM) (CGC) 2019 WL 5872516, at *4 (W.D. Tenn. Aug. 8, 2019) (collecting cases standing for the proposition that closed accounts recorded in credit reports are not materially misleading when the reports state that the accounts have a $0 balance).[15]

---

[15] Plaintiff argues that Defendant failed to present persuasive evidence such as payment receipts to determine whether Plaintiff was 30 days delinquent at the time his Account was closed. (Opp. at 12.) Appended to its Reply is a partial screenshot from Defendant's system of record listing Plaintiff's payments to the Account. (*See* Ex. A to Reply, Account Transaction History (Dkt. 59-1).) The court does not consider this evidence, however, as it is unsupported by an affidavit. *See Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F. Supp. 2d 373, 379 (S.D.N.Y. 2004) (citing *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) ("[A]t the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records."). While a close call, the court finds that all other evidence, when reviewed as a whole, shows that Plaintiff paid off the loan and had no further obligations. Thus, the "past due" status was clearly historical.

As Plaintiff has failed to make a threshold showing that Truist's reporting was inaccurate or misleading, this court need not consider whether Truist conducted a reasonable investigation or whether its conduct was negligent or willful. *See Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175 (CS), 2020 WL 6809059, at *5 (S.D.N.Y. Nov. 19, 2020) (citing *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) (defendant entitled to judgment as a matter of law where undisputed facts indicate plaintiff did not meet threshold requirement of establishing that reported information was inaccurate or incomplete)).

## IV. CONCLUSION

For the reasons reviewed herein, Defendant's motion for summary judgment is GRANTED, and Plaintiff's claims are DISMISSED.

SO ORDERED.

Dated:  Brooklyn, New York
        January __, 2024

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge